VOLVO TRADEMARK HOLDING AKTIEBOLAGET, a Swedish corporation; Volvo Construction Equipment North America, Inc., a Delaware corporation; and Champion Road Machinery Limited, a Canadian corporation, Plaintiffs,

v.

AIS CONSTRUCTION EQUIPMENT CORPORATION, a Michigan corporation; CLM Equipment Company, Inc., a Texas corporation; Future Equipment Company, Inc., a Texas corporation; Clark Machinery Company, an Arkansas corporation; and Nueces Farm Center, Inc., d/b/a Nueces Power Equipment, a Delaware corporation, Defendants.

No. CIV. 100CV238.

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 27, 2001.

Carolyn A. Dubay, Hunton & Williams, Raleigh, NC, Michael J. Lockerby, Stephen P. Demm, John Gary Maynard, Hunton & Williams, Richmond, VA, Albert Diaz, Nash E. Long, III, T. Thomas Cottingham, III, Hunton & Williams, Charlotte, NC, for plaintiffs.

Edward L. Bleynat, Jr., Asheville, NC, J. Michael Dady, Ronald K. Gardner, Scott E. Korzenowski, Dady & Gardner, P.A., Minneapolis, MN, for defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendants' timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendants' motion to dismiss to the Magistrate Judge for a recommendation as to disposition. This Court has conducted a *de novo* review of the Recommendation and finds the Defendants' motion to dismiss should be denied and the Plaintiffs' motion for leave to amend their complaint should be granted. 28 U.S.C. § 636(b); Fed.R.Civ.P. 72.

### I. PROCEDURAL HISTORY

On October 10, 2000, Plaintiffs (collectively referred to as "Volvo") filed this action pursuant to 15 U.S.C. §§ 1121, *et*

*seq* . (the Lanham Act) and 28 U.S.C. § 2201 seeking, among other relief, declaratory judgment against Defendants AIS Construction Equipment Corporation, CLM Equipment Company, Inc., Future Equipment Company, Inc., and Nueces Farm Center, Inc. ("original Defendants"). On November 27, 2000, the original Defendants moved to dismiss the action because Plaintiffs failed to state claim under the Lanham Act, thus depriving the Court of federal question jurisdiction, and failed to state a case or controversy under the declaratory judgment statute. On December 14, 2000, Plaintiffs, as a matter of course, filed a First Amended Complaint and on December 18, 2000, responded to the motion to dismiss.[1] The amended complaint added Clark Machinery Company (Clark) as a Defendant to the action. The original Defendants then moved to strike Plaintiffs' response to the motion to dismiss on the grounds that the time within which to respond to the First Amended Complaint had not yet expired. The next day, January 5, 2001, the original Defendants and Clark, all represented by the same attorneys, moved to dismiss the First Amended Complaint on the same grounds as previously raised. The Magistrate Judge entered an order striking Plaintiffs' first response to the motion to dismiss and gave them an additional period of time to respond to the second motion to dismiss.

On March 19, 2001, Plaintiffs responded to the second motion and moved for leave to amend their complaint a second time.

That amendment would delete Nueces Farm Center, Inc. (Nueces) as a party because it was the sole non-diverse Defendant and would clarify that jurisdiction was asserted on the basis of diversity as well as federal question jurisdiction.[2] Simultaneously, Plaintiffs filed a notice of dismissal pursuant to Fed.R.Civ.P. 41 of Defendant Nueces.[3] The Magistrate Judge issued a Memorandum and Recommendation on April 6, 2001, in which he recommended that this notice of dismissal be stricken but that the motion to amend the First Amended Complaint be granted.

On June 6, 2001, Plaintiff Volvo Trademark Holding Aktiebolaget (Volvo Trademark) initiated a second action in this Court against Nueces. See Civil No. 1:01cv122. The allegations brought against Nueces are the same as those asserted against it in this action. Nueces' motion to dismiss or stay the action is presently pending before the Magistrate Judge who has scheduled oral argument.

Inexplicably, even before responsive pleadings have been filed and the initial pretrial conference has been held, this action has grown to encompass three files and seven accordion folders of pleadings.

## II. DEFENDANTS' OBJECTIONS

The Magistrate Judge found that Plaintiffs' had stated a claim under the Lanham Act and there was an actual case or controversy. Thus, he recommended denial of the Defendants' motion to dismiss. In

---

**1.** Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading once "as a matter of course" prior to the service of a responsive pleading. A motion to dismiss does not qualify as a responsive pleading for purposes of Rule 15(a). *Domino Sugar Corp. v. Sugar Workers Local Union 392,* 10 F.3d 1064, 1068 n. 1 (4th Cir.1993).

**2.** Both Volvo Construction and Nueces are Delaware corporations.

**3.** The Magistrate Judge pointed out that dismissal of one party to an action, rather than the action as a whole, should have been accomplished pursuant to Rule 15. As a result, Nueces remains a party to this action. *Skinner v. First American Bank of Virginia,* 64 F.3d 659 (table), 1995 WL 507264 (4th Cir. 1995).

their original filing, Defendants conceded that Plaintiffs asserted diversity jurisdiction, but argued that this Court should abstain in favor of *AIS Construction Equipment Corp. v. Volvo Construction Equipment North America, Inc. et. al.*, Civil Action No. 4:01cv166, an action pending in the federal court in Arkansas between these same parties. They also objected to the recommendation that there is an actual case or controversy and argued that Plaintiffs failed to state a claim under the Lanham Act. In a supplemental filing, Defendants do not concede diversity jurisdiction and argue that Plaintiffs' motion to amend should be denied. Defendants also construe the Magistrate Judge's Recommendation as including a finding that there is no federal question jurisdiction.[4] In yet a third set of objections, Defendants renew all the grounds raised originally before the Magistrate Judge, including lack of diversity jurisdiction.[5]

## III. THE MOTION TO AMEND THE COMPLAINT

■ The Plaintiffs openly acknowledge the reason for amendment is to create diversity jurisdiction. Defendants cry foul, claiming such is not allowed.

> Defendant[s] first argue[ ] that because Plaintiffs['] original complaint, . . . lacked complete diversity of citizenship, inasmuch as Plaintiff[s] named [Nueces]-a nondiverse party-as a defendant, the district court lacked subject matter jurisdiction over the complaint and should have dismissed the case . . . . Defendant[s] claim[ ] that Plaintiff[s] did not

cure this jurisdictional defect by amending its complaint and dropping [Nueces] from the suit because jurisdiction is determined at the time the case is initially commenced and may not be created by dropping an indispensable party. Although [the Court] agree[s] that a party may not create diversity by dropping a nondiverse and indispensable party, . . . it is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity.

*Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763 (6th Cir.1999); accord, *Banca del Sempione v. Provident Bank of Maryland*, 85 F.3d 615 (table), 1996 WL 181483 (4th Cir.1996) (citing *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683 (4th Cir.1978)). Defendants have not argued, and could not in good faith, that Nueces is an indispensable party. Therefore, the Plaintiffs' motion for leave to amend is hereby granted and the Court finds that diversity jurisdiction is established.

## IV. DEFENDANTS' MOTION TO DISMISS

### A. The standard of review.

Despite the voluminous pleadings filed to date, the issues for resolution on the motion to dismiss are straightforward; *i.e.*, does this Court have federal question jurisdiction, and is there an actual case or controversy between the parties. Plaintiffs' complaint seeks declaratory relief pursuant to 28 U.S.C. § 2201 and injunctive relief pursuant to the Lanham Act.

---

**4.** In Supplemental Objections filed May 9, 2001, defense counsel wrote, "It was only because the original complaint filed in this Court so clearly lacked federal question jurisdiction (see Recommendation of Magistrate Judge Cogburn) . . . ." The undersigned has found no such recommendation by the Magistrate Judge.

**5.** The Court finds Plaintiffs' argument that these latter submissions are outside the ten day period for the filing of objections to be well-taken. However, in the interest of finality, all issues are addressed.

The well-pleaded complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff[s'] properly pleaded complaint. The well-pleaded complaint rule operates no differently when the jurisdictional issue is whether a district court possesses subject matter jurisdiction of a declaratory judgment action purporting to raise a federal question. One does need to understand, however, that in a declaratory judgment action, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff. Thus, if the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff. If the answer to this question is yes, federal question jurisdiction exists.

*Columbia Gas Transmission Corp. v. Drain,* 237 F.3d 366, 370 (4th Cir.2001) (citations omitted).

In addition, the plaintiff has the burden of proving subject matter jurisdiction when a defendant challenges it pursuant to Fed.R.Civ.P. 12(b)(1). *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 646 (4th Cir.1999). Such a motion should be granted only if the material jurisdictional facts are not in dispute and the defendant is entitled to prevail as a matter of law. *Id.*

## B. The factual background.

Based on the standard of review, the undersigned must begin with the language of the complaint. Plaintiff Volvo Construction Equipment North America, Inc. (Volvo Construction) manufactures and sells construction equipment, including motor graders. Second Amended Complaint, at ¶'s 14–15. In January 1998, Plaintiff Champion Road Machinery Limited (Champion) was acquired by Volvo Construction Equipment N.V., which is not a party to this action, but which is a subsidiary of Volvo Construction's ultimate parent company, Aktiebolaget Volvo (AB Volvo).[6] *Id.,* at ¶'s 13–14. Until January 2001, Plaintiff Champion manufactured and sold motor graders under the CHAMPION trademark. *Id.,* at ¶'s 14–15, 22.

Plaintiff Volvo Trademark owns, manages and enforces the portfolio of VOLVO trademarks for commercial equipment on behalf of AB Volvo. *Id.,* at ¶ 13. Thus, in connection with trademarks, the equipment now manufactured by Champion falls under the supervision of Volvo Trademark. *Id.,* at ¶'s 13–14.

Prior to its acquisition, Champion had entered into Champion Dealer Agreements which granted licenses to the CHAMPION trademark and allowed the sale of Champion equipment. *Id.,* at ¶'s 16–17. The Defendants in this action had such agreements with Champion. *Id.* However, Volvo Construction, as agent for Champion, terminated those agreements when it determined that the equipment manufactured by Champion would no longer carry the CHAMPION trademark but would instead be branded with the VOLVO trademark. *Id.,* at ¶ 16. Defendants contend that, pursuant to the dealership agreements, Champion remains liable to provide them with "Champion's Motor Graders, whatever that term means." Defendants'

---

**6.** However, Volvo Construction Equipment N.V. actually supervises the activities of the Volvo Construction Equipment Group of which both Champion and Volvo Construction are members.

Reply in Support of their Objections to Findings of Fact, Conclusions of Law and Recommendation, at 4. Volvo seeks a declaration that it is not required to sell VOLVO marked graders to the former Champion dealers who are not Volvo trademark licensees. And, among other relief, it seeks a declaration that these dealers may not use the VOLVO mark on goods distributed by them.

## C. Federal question jurisdiction.

Defendants argue that this case presents nothing more than a contract dispute over the termination of the dealership agreements.[7] They readily admit they cannot sell VOLVO marked products without a licensing agreement; thus, they argue, no infringement has occurred, the Lanham Act is not implicated and no federal question exists. However, Defendants also claim that Champion, now owned by AB Volvo, remains liable to furnish them with Champion motor graders, "whatever that term means." And, Plaintiffs acknowledge that initially the motor graders manufactured by Champion and on which the VOLVO mark will now be placed are indistinguishable from the Champion motor graders. "Effective January 2, 2001, Champion Road no longer manufactures motor graders under the CHAMPION Trademark. Rather, effective January 1, 2001, Champion Road only manufactures motor graders under the VOLVO Marks for supply to Volvo Construction and the other members of the Volvo Construction Equipment Group." Second Amended Complaint, at ¶ 54.

Title 15, United States Code, § 1121(a) provides that the "district ... courts of the United States shall have original jurisdiction ... of all actions arising under [the Lanham] Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." Title 28, United States Code, § 1338(a) provides that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... trademarks." In the most recent complaint, Plaintiffs allege that Volvo Construction and Champion have already been sued twice in connection with the termination of the dealership agreements. In addition, numerous letters threatening suit have been received from terminated dealers, including the named Defendants. Defendant Clark has insisted that it be allowed to sell VOLVO marked motor graders and actually ordered the same. And, Plaintiffs allege Defendants and potential defendants have repeatedly described themselves in both litigation and correspondence threatening the same as Volvo/Champion dealers. Thus, Plaintiffs seek a declaration that its marks may not be used on equipment not authorized to be so identified, that the former Champion dealers are not licensed to use VOLVO marks, to distribute VOLVO equipment or to represent themselves as Volvo dealers and that Volvo is under no obligation to license the VOLVO marks to the former Champion dealers.

■ In the Second Amended Complaint, Plaintiffs allege that former Champion dealers are representing themselves as Volvo dealers or licensees. This falls within the ambit of the Lanham Act. *The New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183 (2nd Cir.2001) (involving suit against defendant who was not an authorized dealer of the plaintiff's products); *American Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060 (2nd Cir.1990)

7. Prior to or at approximately the same time as this action was filed, each of the Defendants' dealership agreements was terminated by Volvo Construction on behalf of Champion.

(involving a former authorized dealer); *Bernina of America, Inc. v. Fashion Fabrics Int'l, Inc.*, 2001 WL 128164 (N.D.Ill. 2001) (confusion as to whether a defendant represents itself as an authorized dealer states a claim under the Lanham Act). When a former licensee or dealer continues to use a mark after its license has been revoked, a compelling case is presented because of the danger that the consuming public will believe the defendant is still an authorized representative of the mark holder. *Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38 (2nd Cir.1986).

Moreover, not all trademark cases involving a contract issue devolve into common law claims depriving the court of federal question jurisdiction. "As long as the complaint asks for a remedy expressly provided by the [Lanham] Act, the suit fits squarely" into federal question jurisdiction. *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969 (4th Cir.1990). "If the owner of a federal trademark registration who is a licensor alleges that the licensee has merely breached the license, there is no federal jurisdiction. But if the licensor also alleges infringement by the licensee on the ground that the license has already been terminated, then there is federal jurisdiction." *5 McCarthy on Trademarks*, § 32:4. Thus, for purposes of withstanding a motion to dismiss, Plaintiffs have sufficiently alleged federal question jurisdiction.

**D. Actual case or controversy.**

 In addition, the complaint states a claim under the declaratory judgment statute. As previously noted, even "if the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff. If the answer to this question is yes, federal question jurisdiction exists." *Columbia Gas Transmission Corp., supra.* Here, the Defendants affirmatively assert they are entitled to motor graders under either the CHAMPION or VOLVO mark by claiming that they are entitled to a continued supply of Champion motor graders, "whatever that term means." The clear implication is that the term now means Volvo · motor graders. Defendants have already begun litigation against the Plaintiffs in other courts based on breach of contract. Defendants could sue Plaintiffs here and Plaintiffs would have a federal defense, *i.e.*, they cannot provide Defendants with Volvo products without violating the Lanham Act.

Moreover, Plaintiffs allege in the complaint that Defendants have already represented themselves as Volvo dealers. An "actual case or controversy" has been stated. *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2nd Cir.1996); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 828 F.2d 755, 757 (Fed.Cir.1987); *Energy Recovery, Inc. v. Hauge*, 133 F.Supp.2d 814, 819 (E.D.Va. 2000).

Finally, Defendants vehemently contended that the Arkansas action should go forward while this one is dismissed or stayed. On June 20, 2001, Chief U.S. District Court Judge Susan Wright for the Eastern District of Arkansas, administratively terminated *AIS Construction Equipment Corp. v. Volvo Construction Equipment North America, Inc. et. al.*, Civil Action No. 4:01cv166, in deference to this action and noted that in the event the Defendants' motion to dismiss in this action were to be denied, she would transfer that action to this District. Thus, the re-

quest that this Court abstain has been rendered moot.[8]

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' motion for leave to amend the First Amended Complaint is hereby **GRANTED**, and the Second Amended Complaint, filed March 19, 2001, is deemed appropriately filed as of that date.

**IT IS FURTHER ORDERED** that the Defendants file answer or otherwise plead to Plaintiffs' Second Amended Complaint within 15 days of service of this Order.

**IT IS FURTHER ORDERED** that the Magistrate Judge's recommendation that Plaintiffs' Voluntary Dismissal of Nueces Farm Center, Inc., be stricken is **SUSTAINED**, and such dismissal is hereby **STRICKEN**; that Defendant remains a party to this action.

**IT IS FURTHER ORDERED** that the Defendants' motion to dismiss is hereby **DENIED**.

## MEMORANDUM AND RECOMMENDATION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendants' Motion to Dismiss the Amended Complaint and plaintiffs' Motion for Leave to Amend their first amended complaint. In the original motion to dismiss, defendants made a compelling argument that federal-question jurisdiction does not exist in this declaratory-judgment action, inasmuch as there is no federal claim or controversy under the Lanham Act, because defendants are not using, much less infringing, plaintiffs' VOLVO

mark. As previously noted, this case appears to be the identical inverse or mirror to *Nueces Farm Center, Inc. v. Volvo Construction Equipment North America, Inc.,* C–00–513 (S.D.Tex.2000), which the district court there determined was improperly removed by defendants therein (plaintiffs herein) because a potential federal defense under the Lanham Act does not create federal jurisdiction. *Id.,* Order of January 24, 2001.

After this court entered an earlier order setting defendants' Motion to Dismiss for hearing, plaintiffs, apparently seeing the handwriting on the wall, have added diversity to the original jurisdictional basis of federal question by doing two things: filing a Rule 41 dismissal of their claim against Nueces Farm Center, Inc., (which is a Delaware corporation, and would have otherwise defeated complete diversity); and sought leave to file a second amended complaint that adds an assertion of diversity jurisdiction.

From the outset, a Rule 41 dismissal of a party rather than an action is ineffectual as a matter of law. In *Gahagan v. North Carolina Highway Patrol,* 1:00cv52–T (W.D.N.C.2000), the district court held, in relevant part, as follows:

> Rule 41, however, speaks only to the dismissal of "actions." .... Rather than a Rule 41 dismissal, the Plaintiff should seek to amend his complaint by meeting the requirements of Rule 15.

*Id.,* at 3 (copy available at *www.ncwd.net* ). The undersigned, therefore, will recommend that the Rule 41 dismissal be stricken as ineffectual.

Turning next to plaintiffs' Motion for Leave to Amend their first amended complaint, defendants, while asserting futility,

8. Plaintiffs' brought this to the attention of the Court in a supplemental pleading. Having argued for abstention, Defendants' failure to likewise advise the undersigned is disingenuous.

argue that even if amendment is allowed, the result would be the same. A plaintiff switching or adding jurisdictional foundations is a new issue for this court, and the undersigned, having searched the reported cases, has found little guidance. In *Doran v. Lee*, 287 F.Supp. 807 (W.D.Pa.1968), the district court was faced with a similar situation. Plaintiffs in *Doran* attempted to assert jurisdiction in admiralty, but when it became apparent that such jurisdiction did not exist, they attempted to perfect diversity jurisdiction by dropping a nondiverse defendant. The *Doran* court held, as follows:

> A complaint should not be dismissed on the grounds of lack of jurisdiction if it reveals that any grounds for jurisdiction exist between plaintiff and any defendant and is not otherwise subject to objection that the parties dismissed are indispensable parties to the action. "The district court, then, has the power to and in the exercise of its discretion may, permit parties to be dropped, if they are not indispensable, and thereby perfect jurisdiction." Furthermore, where an action has been brought under a federal statute and the statute is inapplicable, plaintiffs may be granted leave to amend to change the whole jurisdictional basis of the suit and convert it into a civil action based on diversity of citizenship.

*Id.,* at 813 (citations omitted). The undersigned finds such reasoning persuasive and will follow the logic of the Pennsylvania court.

The undersigned further finds no infirmity as a matter of law in changing or adding to the jurisdictional basis after a case has been filed and it becomes apparent that the original basis is insufficient. As to whether it is appropriate to allow the proposed second amendment, review of plaintiffs' proposal reveals that it is in conformity with the requirements of Rule 15(a), Federal Rules of Civil Procedure, inasmuch as it appears that the amendment is made in good faith and would not prejudice the nonmoving party.

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), mandates a liberal reading of the rule's direction for "free" allowance: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., futility of amendment, etc." In *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.1980), we noted that under *Foman* a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial.

*Ward Electronics Service, Inc. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir.1987). The undersigned, therefore, will recommend that plaintiffs' Motion for Leave to Amend be allowed.

At the hearing, counsel for defendants argued that the reasons given in their previously filed motion to dismiss would be equally applicable even if the court allowed the amendment. The undersigned, therefore, will consider the Motion to Dismiss in light of the Second Amended Complaint, which is 83 pages. With the exceptions of dropping Nueces Farm Center, Inc., and asserting diversity jurisdiction, little has changed from the first Amended Complaint. Plaintiffs each seek a declaratory judgment under 28, United States Code,

Section 2201, to clarify their rights and obligations under

(1) the Lanham Act with respect to the VOLVO marks;

(2) certain contracts with CHAMPION mark licensees; and

(3) state laws which may be preempted by the Lanham Act through the Supremacy Clause.

Plaintiffs also seek injunctive relief, which would prohibit defendants from marketing or attempting to market VOLVO branded motor graders; from using the VOLVO marks; and from engaging in infringement, unfair competition, and dilution under the Lanham Act.

Defendants have moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that plaintiffs have failed to state a cognizable claim. Rule 12(b) authorizes dismissal based upon a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Court discussed in *Neitzke:*

This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory .... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id.,* at 1832 (citation omitted). For the limited purpose of making a recommendation as to disposition of defendants' motion, the undersigned has accepted as true the facts alleged by plaintiffs in the second amended complaint and viewed them in a light most favorable to plaintiffs.

To summarize the 83–page complaint, plaintiffs purchased Champion Road, a Canadian Corporation, in 1997. Since 1993, Champion has manufactured some of its road graders in Charlotte, North Carolina, with the bulk of their operations remaining in Canada. After the purchase, Volvo began the process of consolidating Champion's operations into its own operations in Asheville, North Carolina. Since 1997, defendants, who are or were Champion motor grader dealers, were required to place new equipment orders though Volvo in Asheville. Earlier this year, Volvo sent letters to those dealers terminating their Champion franchises. It is plaintiffs' position that the dealership contracts it assumed when they purchased Champion were terminable at will, only required the maker to provide Champion trademarked graders, and contained a trademark license for use of the CHAMPION mark, and no other. Understandably, defendants contend that the course of dealing with Champion made the franchises terminable for cause, not at will; they bargained for and are entitled to receive motor graders manufactured at the Champion facilities, regardless of brand, or no brand at all; and they do not seek to use any mark other than CHAMPION, if any at all. Plaintiffs further contend that they filed this declaratory-relief action in response to threats of civil actions by these remaining defendants and the filing of a civil action by the dismissed defendant, Nueces Farm Center, Inc., in Texas. Apparently, the Champion factories are still producing road graders; however, those road graders no longer bear the CHAMPI-

ON mark, but, instead, bear the VOLVO brand.

Perhaps the most important aspect of Rule 12 is the requirement that this court view the facts pleaded by plaintiffs in a light most favorable to them, and a motion to dismiss for failure to state a claim, as asserted here, should not be granted "unless it appears to a certainty that the plaintiff[s] would be entitled to no relief under any state of the facts which would be proved in support of [their] claim." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 n. 4 (4th Cir.1993). Without doubt, plaintiffs' complaint contains very specific allegations of trademark infringement, unfair competition, and dilution—all which state claims under the Lanham Act. Whether these allegations are more true than defendants' version of what has occurred or is occurring is not appropriate under Rule 12(b)(6). What is important is that plaintiffs have alleged facts, which, if later proved, could be the basis for a finding that defendants, through legal process and threats of civil actions, are attempting to market motor graders bearing the VOLVO mark without first securing a licensee from the mark holder. The Lanham Act imposes affirmative duties upon mark holders to police their federally registered mark to prevent misleading uses. *See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 387 (5th Cir.1977). A leading commentator upon whom this court relies states that injunctive relief is available even before the putative infringer sells infringing goods. 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition,* § 30.05, at 30–18 to 19. Plaintiffs, therefore, have stated a claim upon which relief may be afforded.

The more troubling issue is whether plaintiffs' claims present an actual case or controversy. Defendants point to no actual use or, for that matter, desire to use the VOLVO mark. Plaintiffs argue that what defendants seek through threats and litigation would necessarily require an unlawful forced use of the VOLVO mark, an unauthorized use of the CHAMPION mark, or a requirement that plaintiffs forego their valuable marks and provide unbranded goods, any of which would be contrary to the Lanham Act. What makes this difficult it that defendants' franchises were only recently terminated, and this action was filed while the alleged infringing activity was coming to fruition. Assuming for "actual-case-or-controversy" analysis that the allegations of the second Amended Complaint are not true, *i.e.,* that defendants have not yet attempted to obtain, market, and distribute VOLVO marked road graders without a license, both *McCarthy, supra,* and leading cases, *NTN Communications, Inc. v. Interactive Network, Inc.,* 1995 WL 569419 (N.D.Cal. 1995), indicate that judicial relief is available even before the defendant has acted to dilute or infringe. By its very nature, declaratory relief is prophylactic—it seeks to prevent the injury by curtailing the harm. *See* 28 U.S.C. § 2201.

The question becomes "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In order for defendants to receive the relief they allegedly have threatened to seek, it is quite possible that plaintiffs' marks will be impacted in a manner that is inconsistent with the Lanham Act. The substantial controversy among these parties is quite real. Defendants are fighting for their economic lives, for without road graders to sell, they are most likely out of business. In opposi-

tion to this are the Volvo defendants, which have made a substantial investment in a line of machinery which compliments their other lines and is likely to be profitable or more profitable if the principle of "economies of scale" is employed. These adverse interests, while one-sided, are set forth in plaintiffs' second Amended Complaint. The undersigned imagines that while they are not yet required to do so, defendants will file counterclaims for breach of contract and seek to add additional defendants through permissive joinder or even transfer matters from other jurisdictions for consolidation. While defendants run the risk of being out of business if they do not challenge the termination decision, plaintiffs run the risk of incurring multiple liabilities if they do not seek judicial interpretation and clarification of their rights in respect to the contracts and the use of their registered marks. Without doubt, there is an active and immediate controversy among these plaintiffs and defendants, and this court stands ready to resolve that controversy.

## RECOMMENDATION

IT IS, THEREFORE, RESPECTFULLY RECOMMENDED that

(1) defendants' Motion to Dismiss the Amended Complaint, as further amended, be **DENIED**;

(2) plaintiffs' Motion for Leave to Amend their first amended complaint be **GRANTED**; and

(3) plaintiffs' Rule 41 Dismissal of Nueces Farm Center, Inc., be **STRICKEN**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

April 6, 2001.